**LAMONICA HERBST & MANISCALCO, LLP**
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
(516) 826-6500
Joseph S. Maniscalco, Esq.
*Proposed Counsel for the Debtor and Debtor-in-Possession*

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>PUERTO PLATA SEAFOOD CORP.,<br><br>Debtor. | Chapter 11<br>Case No. 26-45148 (JTB)<br><br>Subchapter V |

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTOR TO USE CASH COLLATERAL AND PROVIDE ADEQUATE PROTECTION TO SECURED CREDITOR**

TO: THE HONORABLE JAMES T. BENTLEY
UNITED STATES BANKRUPTCY JUDGE

Puerto Plata Seafood Corp., the debtor and debtor in possession ("Debtor"), by its proposed counsel, LaMonica Herbst & Maniscalco, LLP, respectfully represents and sets forth as follows:

1. By this motion ("Motion"), the Debtor respectfully seeks the entry of an interim Order (and subsequently a final Order), pursuant to sections 361, 363(c) and 363(e) of Title 11 of the United States Code ("Bankruptcy Code"), and Rule 4001(b) of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), (a) authorizing the Debtor's use of the cash collateral ("Cash Collateral") of its first priority secured creditor, U.S. Small Business Administration ("SBA"); its second lien holder, OceanFirst Bank (f/k/a Flushing Bank) ("OceanFirst"); third lien holder, ReadyCap Lending, LLC ("ReadyCap"), and fourth lien holder TD Bank, N.A. ("TD Bank")(SBA, OceanFirst, ReadyCap and TD Bank collectively herein referred to as "Lenders"), in accordance with the budget ("Budget"), annexed hereto as **Exhibit**

**A**, in order to avoid immediate and irreparable harm to the Debtor, its estate and creditors, and (b) providing adequate protection to the Lenders.

2. The Debtor anticipates that it will enter into customary stipulations with each of the Lenders concerning the use of cash collateral, to the extent necessary, which will be submitted to the Court for its consideration on or before, or promptly following, the hearing date in connection with this Motion. The Debtor's proposed budget which will be memorialized in a stipulation, as more fully set forth herein, seeks the Debtor's use of the Cash Collateral through December 4, 2026 (and then thereafter in accordance with additional budgets).

3. An Order of the Court, which may include a subsequent stipulation to be So Ordered by the Court, authorizing the Debtor's use of such Cash Collateral, will satisfy the requirements of Bankruptcy Code § 363(c)(2)(A) and/or (B).

4. Ultimately, upon submission of a stipulation, and if approved by the Court, the Lenders, as the secured creditors of the Debtor holding an asserted first priority lien, second priority lien, third priority lien and fourth priority lien on substantially all of the Debtor's assets, would thereby grant consent to the Debtor's use of Cash Collateral on the terms and conditions set forth in the stipulation or other Order. Presently, however, until the Debtor and the Lenders have had sufficient time to engage and hopefully negotiate a stipulation for use of cash collateral, the Debtor respectfully requests that the Court enter a preliminary emergency and/or interim Order authorizing the use of cash collateral so as to avoid immediate and irreparable harm to the Debtor's estate and creditors.

5. For all the reasons set forth herein, the Debtor respectfully requests that the Court authorize the Debtor's use of the Cash Collateral and the form of adequate protection provided by the Debtor to the Lenders for the benefit of the Debtor's estate and creditors.

## INTRODUCTION

6. On November 3, 2026 ("Filing Date"), the Debtor filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Eastern District of New York ("Court").

7. The Debtor continues to operate and manage its properties and affairs as a debtor in possession pursuant to section s 1107 and 1108 of the Bankruptcy Code.

8. The Debtor has elected to proceed as a Subchapter V debtor.

## JURISDICTION AND VENUE

9. This Court has jurisdiction to hear and determine this matter under 28 U.S.C. §§ 157 and 1334.

10. Venue of the Debtor's Chapter 11 case and this Motion is proper in this district under 28 U.S.C. §§ 1408 and 1409.

11. This is a "core" proceeding pursuant to 28 U.S.C. § 157(b).

12. The statutory predicates for the relief requested are sections 361, 363(c) and 363(e) of the Bankruptcy Code, Bankruptcy Rules 4001 and 9014, and Local Bankruptcy Rule 4001-5.

## CONCISE STATEMENT PURSUANT TO BANKRUPTCY RULE 4001 – USE OF CASH COLLATERAL

13. Bankruptcy Rule 4001(b)(1)(B) requires the following list for motions, such as this Motion, which seek the use of cash collateral[1]:

(i) The SBA is the entity with an asserted first priority secured interest in the Cash Collateral. OceanFirst, ReadyCap and TD Bank also have security interests in the Debtor's assets and have subordinated second, third and fourth priority liens in all of the Debtor's assets.

[1] Based upon a reading of the security documents, this motion is being filed out of an abundance of caution. The Debtor is unsure whether the Lenders' security interests are secured to cash of the Debtor.

(ii) The Cash Collateral is needed to pay for the Debtor's ordinary, necessary, and reasonable operating expenses, including, but not limited to, management and employee wages and/or compensation, inventory, insurance, utilities, maintenance, and goods and services incidental to the Debtor's business.

(iii) As further set forth herein, the Debtor has submitted a Budget (Exhibit A) which lists all of the Debtor's operational expenses reasonably expected to be incurred through December 4, 2026 that are within the ordinary course of the Debtor's business.

(iv) As further set forth herein, the Debtor anticipates providing adequate protection to the Lenders in the form of post-petition replacement liens upon and security interest in all of the assets of the Debtor, including Cash Collateral, which lien shall be senior to all other security interests in, liens upon or claims against any of such assets, except to the extent any prior lien existed against such assets as of the Filing Date ("Adequate Protection Liens"), and subject to a reservation of rights with respect to a Carveout (as defined below).

(v) It is anticipated that a stipulation for the use of Cash Collateral will include a Carveout for Debtor's professionals, however, the present request for a preliminary emergency Order authorizing use of Cash Collateral does not include a Carveout (and the Debtor's professionals reserve all rights with respect thereto).

**BACKGROUND**

14. The Debtor is a New York corporation that owns and operates as a wholesale seafood distributor to restaurants and markets. The Debtor has been in business since 2013 and provides a great product to the public. The Debtor's customers include restaurants and other retail establishments purchasing seafood.

15. The Debtor has a staff of approximately thirty-six (36) employees consisting of stock and warehouse workers, sales persons, drivers, office personnel and officers. These employees rely on the Debtor each week for their payroll and for the services provided to the Debtor in the ordinary course of business.

16. The Debtor is owned by Diony Urena, President, with a 50% ownership interest, and Rudy Liriano, Vice President/Secretary, with a 50% ownership interest.

17. The Debtor's asserted first priority secured creditor is the U.S. Small Business Administration. Upon information and belief, SBA is owed approximately $1,097,293.03 for an Economic Injury Disaster Loan ("EIDL") loan[2] (subject to any unapplied payments and/or credits) obtained in July, 2020. Behind the SBA is the lien of the OceanFirst in the approximate amount of $500,000.00 for a line of credit incurred in or about 2023. Behind both the SBA and OceanFirst, is the third priority lien of ReadyCap Lending, LLC. ReadyCap holds a term loan with an approximate balance due of $452,598.36 obtained in or about 2024. And lastly, the fourth priority lien held by TD Bank, N.A. in the approximate amount of $249,986.38 for a line of credit incurred in or about 2025.

18. The Debtor has an equipment financing creditor identified as LeaseDirect.com. That creditor is secured to the Debtor's printer and copier and is owed approximately $12,000.00. The Debtor included this payment on its budget as the equipment is necessary for the Debtor's business operations and the Debtor intends to pay this in the ordinary course of its business

19. Finally, the Debtor has two truck loans; one with Mercedes Benz and another with Valley Bank. The Debtor requires the use of those trucks for transportation of food products to customers and for use in the ordinary course of its business. The Debtor has included both of these payments on its budget due to the necessity of use of those vehicles. The remaining trucks that the Debtor uses are owned and not financed.

20. All other Debtor's secured creditors are current in their monthly payments.

---

[2] The Debtor received the original EIDL loan in or about July, 2020 in the amount of $150,000.00. Thereafter, the Debtor and the SBA entered into an Amended Loan Agreement in or about April, 2022 increasing the total EIDL loan amount to $1,156,400.00.

**A. The Pre-Petition Events Leading to Bankruptcy**

21. The Debtor's Chapter 11 filing was precipitated by, among other things, the financial distress caused by inflation, cost of goods, tariffs and fluctuating market costs. This caused the Debtor to rely on merchant cash advances ("MCAs") to sustain business operations and assist with cash flow, working capital, payroll and expenses. At their peak, the MCAs' repayment became unsustainable at an amount in excess of $200,000.00 per week. Because the Debtor was unable to pay its ordinary course debt, the Debtor sought bankruptcy relief. Prior to seeking relief, the Debtor sought reconciliation to reduce weekly obligations. While some MCAs worked with the Debtor on reducing their weekly obligations, others did not.

22. The Debtor commenced the Chapter 11 case to: (a) obtain the benefits of the automatic stay provided under the Bankruptcy Code and avail the company the breathing spell necessary to continue to operate the business; (b) address the resolution of obligations to its creditors; and (c) attempt an orderly reorganization to maximize value for the creditors and other parties in interest. Accordingly, on the Filing Date, the Debtor filed its Chapter 11 bankruptcy case.

23. The Debtor believes that based upon the current evaluation of its assets and dependent upon the Debtor's reorganization efforts, there may be sufficient funds to make a distribution to unsecured creditors.

**USE OF THE COLLATERAL**

24. The Debtor requires the immediate use of the Cash Collateral in order to avoid immediate and irreparable harm to the Debtor, its estate and creditors. As stated earlier, the Debtor is unsure the Lenders have a lien on cash of the Debtor, but the Debtor is seeking authority from the Court and noticing the Lenders.

25. The Debtor has an urgent need for the continued use of cash to pay for its customary business expenditures, including payroll for its employees and inventory and goods for sale. Many of the Debtor's employees live paycheck to paycheck and require their payroll after services rendered. Indeed, if the requested relief is not granted, it is very likely that the Debtor will immediately lose its employees and cease operations, all to the detriment of the Debtor's estate and creditors. There is no need for a wage order as payroll was made pre-petition through and including the date before the Filing Date.

26. It remains the Debtor's desire to obtain the consent of the Lenders to ultimately use the Cash Collateral. However, pending a consensual arrangement, the Debtor seeks preliminary Court approval to use the Collateral in accordance with the Budget in order to avoid immediate and irreparable harm to the Debtor's estate and creditors.

27. In consideration for the use of the Cash Collateral and to secure only the Debtor's post-petition use of the Cash Collateral and the diminution of the value thereof, the Debtor anticipates, subject to Court approval, granting a replacement lien to the Lenders against all assets of the Debtor (excluding causes of action and recoveries under chapter 5 of the Bankruptcy Code).

**RELIEF REQUESTED**

28. It is critical in the continuation of the Debtor's business for the Debtor to utilize such funds to pay its ordinary, necessary, and reasonable operating expenses. This is required to preserve, protect and maintain the value of the Debtor's assets for the benefit of the Debtor, its estate and creditors.

**B. <u>11 U.S.C. § 363(c)</u>**

29. Section 363 of the Bankruptcy Code, entitled "Use, sale, or lease of property", at subsection (c), provides:

> (1) If the business of the debtor is authorized to be operated under section 721, 1108, 1203, 1204, or 1304 of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.
>
> (2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless--
>
> > (A) each entity that has an interest in such cash collateral consents; or
> >
> > (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

11 U.S.C. § 363(c).

30. Furthermore, subsection (c)(3) of section 363 of the Bankruptcy Code states:

> (3) Any hearing under paragraph (2)(B) of this subsection may be a preliminary hearing or may be consolidated with a hearing under subsection (e) of this section, but shall be scheduled in accordance with the needs of the debtor. If the hearing under paragraph (2)(B) of this subsection is a preliminary hearing, the court may authorize such use, sale, or lease only if there is a reasonable likelihood that the trustee will prevail at the final hearing under subsection (e) of this section. The court shall act promptly on any request for authorization under paragraph (2)(B) of this subsection.

11 U.S.C. § 363(c)(3).

**C. <u>11 U.S.C. §§ 361 and 363(e)</u>**

31. Section 363(e) of the Bankruptcy Code provides that a party with an interest in property proposed to be used, sold or leased by the debtor may receive adequate protection of such interest before a debtor may use, sell or lease such property. 11 U.S.C. § 363(e).

32. Adequate protection is a flexible concept that is determined by considering the facts of each case. <u>See</u> <u>In re O'Connor</u>, 808 F.2d 1393, 1396–97 (10th Cir. 1987) ("'[A]dequate

protection' [is] a concept which is to be decided flexibly on the proverbial 'case by case' basis." (citations omitted)). While section 361 of the Bankruptcy Code does not itself address the issue of the date of valuation of a creditor's collateral for purposes of determining whether adequate protection exists, the House Report discussion of the language of section 361 of the Bankruptcy Code explains:

> The section does not specify how value is to be determined, nor does it specify when it is to be determined. These matters are left to case-by-case interpretation and development. It is expected that the courts will apply the concept in light of facts of each case and general equitable principles. It is not intended that the courts will develop a hard and fast rule that will apply in every case. The time and method of valuation is not specified precisely, in order to avoid that result. . . . [F]lexibility is important to permit the courts to adapt to varying circumstances and changing modes of financing.

H.R. REP. NO. 95-595, 95th Cong., 1st Sess. 339 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6295; see Paccom Leasing Corp. v. Deico Elecs., Inc. (In re Deico Elecs., Inc.), 139 B.R. 945, 947 (B.A.P. 9th Cir. 1992).

33. Thus, "the protection afforded a creditor whose cash collateral is permitted by the Court to be used by a debtor in possession is whatever condition is deemed necessary to provide adequate protection of the creditor's interest." In re Quality Beverage Co., 181 B.R. 887, 896 (Bankr. S.D. Tex. 1995).

34. Section 361 of the Bankruptcy Code provides certain non-exclusive means of providing adequate protection. One such form of adequate protection is a debtor may provide an additional or replacement lien to the extent of a decrease in the value of the property. See 11 U.S.C. § 361(2).

35. In the absence of approval to use the Cash Collateral, the Debtor will suffer immediate and irreparable harm. The Debtor will be unable to operate and will be forced to close the business and fire all employees, as well as lose a substantial amount of inventory and goods

for sale. Further, without the use of the Cash Collateral, the chances for a successful reorganization and the ability to realize maximum value for the benefit of creditors will effectively be eradicated.

36. The use of Cash Collateral is for the usual and customary expenditures of the Debtor incurred within the ordinary course of business. Because the Debtor has no source of cash to pay for ongoing operations other than the Cash Collateral, the Debtor has a critical need to use the Cash Collateral.

**THE DEBTOR'S ASSETS**

37. As of the Filing Date, the Debtor's aggregate assets consist of the following

(a) Funds in bank accounts in the approximate aggregate sum of $40,000.00;
(b) Accounts receivable in the approximate aggregate sum of $993,000.00;
(c) Inventory in the approximate aggregate sum of $737,224.00;
(d) Equipment with an approximate aggregate value of $307,000.00;
(e) Trucks with an approximate aggregate value of $150,000.00;
(f) Miscellaneous computers and related office equipment worth approximately $30,000.00; and
(g) Goodwill in an unknown amount.

38. Based upon the facts and circumstances of this case as set forth herein, the Debtor submits that providing the Lenders with replacement liens is sufficient adequate protection.

**THE DEBTOR'S BUDGET**

39. As set forth in the Debtor's Budget (Exhibit A), the Debtor has projected the expenses it reasonably expects to incur through December 4, 2026. These expenses include, among other things, accounts payable incurred in the ordinary course of business, payments to the secured creditors, management and employee wages and/or compensation, cost of goods, insurance, utilities, maintenance, and goods and services incidental to the Debtor's business.

40. Because the Debtor has no source of cash to pay for ongoing operations, other than the Cash Collateral, the Debtor has a critical and immediate need to use the Cash Collateral.

## THE LENDERS ARE ADEQUATELY PROTECTED

41. The Debtor submits that authorization of the Debtor's use of the Cash Collateral will benefit all creditors, including the Lenders, by minimizing disruption to the operation of the Debtor's business while enabling the Debtor to commence its reorganization efforts. Further, the Debtor asserts that the use of the Cash Collateral, as requested herein by the Debtor, and upon the terms and conditions as described herein, will not substantially impair the rights of the Lenders.

### D. Replacement Liens

42. The Debtor respectfully requests that this Court authorize the Debtor's use of the Cash Collateral, upon the conditions as set forth herein. The Debtor proposes to grant the Lenders replacement liens (Adequate Protection Liens) against any security interest in all assets of the Debtor (excluding Chapter 5 causes of action and recoveries, if any), to the extent that such liens existed immediately prior to the Filing Date and for any diminution in value. Such replacement liens provide the Lenders with adequate protection.

### E. Carve-Out for Debtor's Professionals

43. As stated herein, it is anticipated, at this time, that the Lenders each will receive a replacement lien and security interest in the post-petition assets of the Debtor. Until such time as the Debtor and the Lenders are able to negotiate and enter a proposed stipulation for the use of cash collateral, no carve out ("Carveout") in favor of the Debtor's professionals is requested in the present preliminary emergency Order authorizing use of cash collateral (however, Debtor and Debtor's counsel reserve all rights with respect to the same). A Carveout for payment of U.S. Trustee quarterly fees pursuant to 11 U.S.C. § 1930 and interest thereon is included in the proposed Order at this time.

## CONCLUSION

44. The Debtor respectfully submits that use of the Cash Collateral as requested herein is in the best interests of the creditors of the estate, and furthermore, is not prejudicial to the Lenders or other creditors. Moreover, it cannot be overstated that the use of the Cash Collateral will also allow the Debtor to continue as a going concern, which will preserve and maximize value in connection with a reorganization of the Debtor's financial affairs. Therefore, the Debtor respectfully requests that the Court authorize the use of the Lenders' Cash Collateral pursuant to Bankruptcy Code § 363(c)(2) and Bankruptcy Rule 4001(b).

## NOTICE AND NEED FOR EXPEDITED RELIEF

45. The Debtor intends to serve a copy of this Motion with exhibits as set forth by Order of the Court. It is respectfully submitted that pursuant to Bankruptcy Code §§ 102(1), 363(c) and 363(e), and Bankruptcy Rules 4001(b), 9006, 9007, 9013, and 9014, and Local Rule 9077-1, service in this manner constitutes adequate and sufficient notice of the relief requested herein.

46. The Debtor submits that this Motion cites the relevant statutory authority and rules for the relief requested, does not raise any novel issues of law, and therefore this Motion complies with Local Bankruptcy Rule 9013-1(a). Accordingly, no separate memorandum of law is required in connection with this Motion.

47. No previous application for the relief requested herein has been made to this or any other Court.

**WHEREFORE,** the Debtor requests the entry of an Order authorizing the Debtor's use of the Cash Collateral, providing adequate protection, and granting the Debtor such other, further, and different relief as may be just and proper.

Dated: November 4, 2026
Wantagh, New York

**LAMONICA HERBST & MANISCALCO, LLP**
Proposed Counsel for the Debtor and Debtor-in-Possession

By: */s/Joseph S. Maniscalco*
Joseph S. Maniscalco, Esq.
A Member of the Firm
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
(516) 826-6500